HENRY SEIBERT *vs.* MINNEAPOLIS & ST. LOUIS RY. CO. *et al.*

| 58 | 65 |
| 67 | 456 |

Argued June 12, 1894.  Affirmed June 28, 1894.

No. 8606.

**Attorneys fees on foreclosure of a mortgage on a railroad.**

*Held,* 1878 G. S. ch. 81, § 44, does not apply to the foreclosure of an ordinary railroad mortgage, or limit the amount of attorney's fees, which may, by the terms of the mortgage, be allowed in case of foreclosure.

**A mortgage construed:**

Plaintiff's mortgage construed. *Held,* it allows the payment of the charges of the trustee for reasonable attorney's fees, in part at least, out of the income of the road in the hands of the receiver, and also allows such charges out of the proceeds of the foreclosure sale, and that it is not material to the mortgagor whether it is paid out of one fund or the other. *Held,* from the record, it must be presumed that such attorney's fees were allowed only for the services rendered in foreclosing this mortgage alone, and that no part of such fees were allowed for the services rendered in the unwarranted attempt made to force the prior mortgages into foreclosure, and to withhold the accrued interest due on them.

Appeal by defendant, the Minneapolis & St. Louis Railway Company, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made May 20, 1893, directing William H. Truesdale, receiver, to pay to John M. Shaw, attorney for plaintiff Henry Seibert, $45,000 on account of his services in this action.

The nature of the action and the amount of professional labor performed by the attorney and counsel for the plaintiff Henry Seibert as trustee may be inferred from the reports of other appeals in this action.   See *Seibert* v. *Minneapolis & St. L. Ry. Co.,* 52 Minn. 148, 246; 58 Minn. 39, 53, 58, 69, 72.

*Edward S. Isham, Albert E. Clarke,* and *Isham, Lincoln & Beale,* for appellant.

*John M. Shaw, Julian T. Davis,* and *T. S. Wright,* for respondent.

CANTY, J.   This is an appeal from an order allowing, and ordering paid to the plaintiff, trustee, in said action, as reasonable charges for attorney's fees, the sum of $45,000, in addition to $5,000 paid

prior thereto. This is one branch of the case, the other decisions in which are filed herewith.

The court below, in its conclusions of law, ordered: "Thirteenth. Upon showing made to the court in respect to the reasonable charges for attorneys and counsel employed in this action by the several trustees of the different mortgages described in the complaint, there is allowed to the attorneys and counsel of Henry Seibert, the plaintiff, trustee of the improvement and equipment mortgage, in addition to the sum of $5,000 heretofore allowed and paid to them, the further sum of $45,000; * * * such allowances, if there are sufficient moneys in the hands of the receiver, to be paid upon orders of the court made at or prior to the settlement of the decree in this cause, and shall cover all allowances to attorneys for subsequent proceedings in this court in said cause."

This was dated May 3d, and was filed May 6, 1893. Thereafter, on May 20, 1893, before the entry of judgment, the court below made its order, reciting that "it appearing to us that there are sufficient funds in the hands of said receiver, applicable thereto," ordered the payment of said sum of $45,000 "on account of fees of attorneys and counsel of plaintiff." From this the defendant mortgagor appeals.

1. Appellant contends that the court erred in allowing attorney's fees in excess of the maximum amount allowed by 1878 G. S. ch. 81, § 44, in the foreclosure of real estate mortgages.

We are of the opinion that this statute was never intended to apply to the foreclosure of a railroad mortgage. There are several provisions of statute regulating the foreclosure of real-estate mortgages which it would be hard to apply to the foreclosure of railroad mortgages. A railroad is in part real estate, and in part personal property. It may as well be claimed that the statute governing the foreclosure of mortgages on chattels applies, as the statute governing the foreclosure of mortgages on real estate. In the one case the statute provides for ten days' notice of sale, and that the sale shall be absolute. In the other case the statute provides for six weeks' notice of sale, and that there shall be a year after the sale in which to redeem. It is clear that a railroad, with its personal property and franchises, should be sold as an entirety. But to apply one law to one part of the property, and another law to another part, would dismember the railroad, result in great loss to the parties, and great

inconvenience to the public, by reason of the consequent interruption in the public service.

These difficulties presented themselves to the Supreme Court of the United States in *Hammock* v. *Loan and Trust Co.*, 105 U. S. 77; and it was there held that the statute regulating the right to redeem real estate from the foreclosure of a mortgage thereon applied only to real estate which could be sold as such on execution; that real estate acquired and used for public purposes, by a public corporation, under its franchises, cannot be so sold; citing *Gue* v. *Tide Water Canal Co.*, 24 How. 257, where it was held that the real estate of a canal company, covered by the locks of the canal, could not be so sold as real estate, or separately from its franchises and other parts of its canal. A railroad, in some respects and for some purposes, is *sui generis*, and can be classed neither as realty nor personalty, but must be put in a class by itself. Some of the respects in which it should be so classed present themselves in the foreclosure of a railroad mortgage, and, in our opinion, one is the question of the charges of the trustee for attorney's fees in conducting the foreclosure. It can hardly be held that by said section of the statute the legislature intended to prohibit the parties to such a mortgage from contracting for the allowance to the trustee, out of the proceeds of the sale, of more than $200 attorney's fees in case of such a foreclosure.

The point is made that there is some real estate, covered by the mortgage and judgment of foreclosure, which is not used for railroad purposes. This real estate constituted only a small part of the mortgaged assets, and the point would be well taken if we could hold that the attorneys' fees allowed in this case, or any considerable part of them, were allowed for the foreclosure of this real estate.

2. It is assigned as error that the court ordered these attorney's fees to be paid out of the income in the hands of the receiver, instead of allowing them out of the proceeds of the foreclosure sale.

By the terms of the mortgage, as alleged in the complaint, and not denied by appellant's answer, the trustee in default is authorized to take possession, by himself, his agents and receiver, conduct the business of the railroad, and, out of the proceeds of the business, take, among other charges, a just compensation for the services of

such attorneys and counsel as may have been by him employed. In case of foreclosure he is also authorized to apply the proceeds of the sale, first, in the payment of the expenses connected with the sale and trust, including the compensation of said trustee, and all charges incurred by it as such trustee. This provides for payment of attorney's fees out of both funds; but, even if it did not, how is the mortgagor prejudiced by taking it out of one fund, instead of the other? Whether it is paid out of one fund or the other, he may be prejudiced by reason of these fees being paid before they are earned, but he nowhere makes that point. The plaintiff's mortgage certainly does not contemplate the payment of attorney's fees in advance of their being earned, and the court should neither attempt to fix the value of such services, nor order them paid before they are earned. But the question is not raised on this appeal.

3. Appellant makes the further point that the trustee had no authority from the mortgagor to commence an action for the foreclosure of all the prior mortgages, and therefore should not be allowed attorney's fees in this case. As far as the services of plaintiff's attorneys were rendered in attempts to foreclose or otherwise unreasonably dispute the rights of these prior mortgages, the point would be well taken. But the order appealed from does not show that any attorney's fees were allowed for such services. It must be presumed from the record that all of these fees were allowed for the part of the services rendered in foreclosing this mortgage alone, as distinguished from unwarranted attempts to force the prior mortgages into foreclosure, and to withhold from the prior mortgagees the accrued interest due them. Except as above stated, the point is not made that these attorney's fees are excessive in amount; and, if it was made, the record in this appeal is so deficient that we would not be able to determine whether these fees were excessive or not. But we will add that the allowance of attorney's fees to the different trustees representing mortgages in this suit seems to us to be exceedingly large. By the records in the different appeals before us, $125,000 have been allowed, and we understand that $15,000 more have been allowed as attorney's fees since these appeals were taken; making, in all, $140,000 for services of attorneys and counsel in the District Court alone. How much more will be asked and allowed for services in this court, we cannot say. We

make these remarks so that the amounts allowed may not be taken as precedents approved by us.

The order appealed from should be affirmed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 826.)